## VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **2nd** *day of* **June, 2020**.

Rayquan Bernard Barnes,                                                                                    Appellant,

 against               Circuit Court No. CJ20000048-00

Commonwealth of Virginia,                                                                                 Appellee.

From the Circuit Court of the City of Norfolk

Before Judges Petty, O'Brien and Senior Judge Frank

On May 4, 2020, came Rayquan Bernard Barnes by court-appointed counsel, and filed a motion requesting that the court set pre-trial bond in this case.

Thereupon, came the Commonwealth, by counsel, and filed a response in opposition thereto.

Upon consideration whereof, and a review of the record in this regard, as discussed below the Court denies Barnes's motion for bond.

### BACKGROUND

Barnes was arrested on February 11, 2020 when he was a juvenile. During that incident, police officers saw Barnes with a younger man and stopped to investigate a bulge in Barnes's pocket that looked like a gun. The two men fled but were caught a short distance away. The bulge had disappeared from Barnes's pocket, and a firearm was found within throwing distance of where Barnes had been. The firearm was a loaded .45 caliber handgun with a round in the chamber. Barnes was charged with three misdemeanors: possession of a handgun, reckless handling of a firearm, and carrying a concealed weapon.

On February 14, 2020, the Norfolk Juvenile and Domestic Relations District Court ("JDR") ordered Barnes detained pending an adjudicatory hearing on March 3, 2020. On March 3, the Commonwealth requested a continuance. JDR granted the continuance and, after holding a detention hearing, ordered Barnes detained until the new adjudication date of March 26, 2020. Barnes did not appeal either the February 14 or

PUBLISHED

the March 3 detention orders. Due to the Supreme Court of Virginia's directives in response to the COVID-19 judicial emergency, the case was continued, over Barnes's objection, to June 3, 2020. On March 26, a detention hearing was again held in JDR and Barnes was again ordered detained until the adjudication date.

Barnes appealed that order to the Norfolk Circuit Court. A hearing was held in circuit court on April 8, 2020. During that hearing, Barnes called his parole officer, who recommended he be released to electronic home monitoring. Barnes was on parole for a 2018 adjudication of delinquency for attempted malicious wounding, conspiracy, and use of a firearm in the commission of a felony. Barnes additionally had been adjudicated delinquent in December 2017 for burglary and larceny of a firearm and in June 2018 for trespassing and destruction of property.

Barnes's mother also testified at the hearing. She testified that she and her son had been shot at in the neighborhood and that she had moved from Norfolk to Chesapeake to escape the violence. She testified that when the offenses had occurred on February 11, 2020, she was in the process of moving to her new residence in Chesapeake where Barnes would reside if released. Moreover, she testified that she is "currently not working due to the Covid-19" and is therefore "home all the time now."

After hearing the testimony and proffered evidence, the circuit court asked the defense attorney to explain JDR's bail policy in cases regarding firearms and asked for a copy of the Juvenile Detention Assessment Instrument for Barnes, which was not in the file. The Commonwealth then noted to the judge that Barnes had had three detention hearings before three different JDR judges and that each had denied release. After defense counsel's argument, the judge asked, "How come you weren't able to convince the juvenile court judge at any of these three detention hearings?" The judge continued, "My only point is what message are we going to send? Detention hearings, they're going to be appealed every single time? Every twenty-one days we're going to hear another one of these up here in circuit court?" In response to defense counsel's argument that circuit court was a *de novo* review, the judge acknowledged that it was *de novo* review, "no doubt about it." However, the court then promptly asked "if any issues [had] changed at all"

-2-

since the prior JDR detention hearings. The circuit court denied bond, saying, "I'm going to leave it up to the juvenile court judges to sort this out. At the next detention hearing you can certainly present the same evidence." Barnes then asked this Court to review the denial of bond pursuant to Rule 5A:2(b).

## ANALYSIS

"This Court reviews a trial court's decision whether to grant bail for abuse of discretion." Commonwealth v. Duse, 295 Va. 1, 7 (2018); Rule 5A:2 ("An order setting or denying bail or setting terms of a bond or recognizance shall be reviewable for abuse of discretion."). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because the reviewing court would have come to a [different] result in the first instance." Duse, 295 Va. at 7 (quoting Lawlor v. Commonwealth, 285 Va. 187, 212 (2013)).

> This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable. This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.

Thomas v. Commonwealth, 62 Va. App. 104, 111-12 (2013) (quoting Hamad v. Hamad, 61 Va. App. 593, 607 (2013)). The Supreme Court has identified three ways in which a trial court abuses its discretion: when (1) it fails to consider a relevant factor that should have been given significant weight; (2) it considers and gives significant weight to an irrelevant or improper factor; or (3) it considers all proper factors, and no improper ones, but, in weighing those factors, the court commits a clear error in judgment. Lawlor, 285 Va. at 213.

A statutory presumption of release exists for juveniles charged with offenses. A juvenile taken into custody "shall immediately be released . . . to the care, custody and control of such juvenile's parent . . . or other suitable person able and willing to provide supervision and care for such juvenile . . . ." Code § 16.1-248.1. However, a juvenile may be detained in a secure facility "upon a finding by the judge . . . that there is probable cause to believe that the juvenile committed the act alleged," and

1. The juvenile is alleged to have (a) violated the terms of his probation or parole when the charge for which he was placed on probation or parole would have been a felony or Class 1 misdemeanor if committed by an adult; (b) committed an act that would be a felony or Class 1 misdemeanor if committed by an adult; or (c) violated any of the provisions of § 18.2-308.7, and there is clear and convincing evidence that:

> a. Considering the seriousness of the current offense or offenses and other pending charges, the seriousness of prior adjudicated offenses, the legal status of the juvenile and any aggravating and mitigating circumstances, the liberty of the juvenile, constitutes a clear and substantial threat to the person or property of others;

> b. The liberty of the juvenile would present a clear and substantial threat of serious harm to such juvenile's life or health[.]

Code 16.1-248.1(A).[1]  Finally,

> The criteria for continuing the juvenile in detention or shelter care as set forth in this section shall govern the decisions of *all persons* involved in determining whether the continued detention or shelter care is warranted pending court disposition.  Such criteria shall be supported by clear and convincing evidence in support of the decision not to release the juvenile.

Code § 16.1-248.1(D) (emphasis added).

As the Supreme Court has observed, the appellate framework for expedited review of decisions granting or denying bail "exists because of the vital and urgent importance of bail decisions to the liberty interests of the accused as well as to the safety of the public.  Shannon v. Commonwealth, 289 Va. 203, 206 (2015).  The vital and urgent importance of bail decision is in no way diminished when the accused is a juvenile.  Granted, "[t]here is no general requirement that trial courts must state for the record the reasons underlying their decisions."  Id.

> Nevertheless, in light of the public policy underlying the laws providing for prompt and meaningful review of bail decisions, a court making such a decision has a duty to articulate the basis of its ruling sufficiently to enable a moving court to make an objective determination that the court below has not abused its discretion.

Id.

---

[1] Other criteria listed in Code § 16.1-248.1 for supporting detention are not relevant to the case before us.

Here, the circuit court failed its duty to articulate the basis of its ruling. In order to continue Barnes's detention, the court was required to make a finding "that there [was] probable cause to believe that [Barnes] committed the act alleged." See Code § 16.1-248.1(A). The court failed to articulate that finding. The court was also required to find by "clear and convincing evidence" that releasing Barnes would "present a clear and substantial threat of serious harm" to himself or others. See Code § 16.1-248.1(A)(1). The court failed to articulate that finding. Moreover, the court was required to determine that the detention decision was "supported by clear and convincing evidence in support of the decision not to release the juvenile." See Code § 16.1-248.1(D). The court failed to articulate that it was applying a "clear and convincing" standard and to reference the evidence used to support the decision not to release Barnes. See Shannon, 289 Va. at 204 (finding conclusory statements regarding the standard of review and findings, which is more than provided in this case, to be insufficient). The circuit court's failure to include these things in the record makes it "impossible for [this Court] to determine from the circuit court's ruling what, if any, consideration or weight the circuit court might have given to the statutory presumption" for release and the factual support for the statutory criteria in Code § 16.1-248.1. See Id. at 207. Thus, we hold that the trial court did not "articulate the basis of its ruling sufficiently to enable [this Court] to make an objective determination that [it] ha[d] not abused its discretion."[2] Id. at 206.

That conclusion, however, does not end our analysis. As the Supreme Court explained in Shannon, "where it is impossible to determine . . . what consideration or weight the circuit court might have given to [required or otherwise relevant factors]," we are "*required* to look at the record made in the [circuit] court to

---

[2] The circuit court's comments regarding prior detention hearings in JDR could not have been the basis of its decision. JDR's March 26,2020 detention decision was irrelevant to a *de novo* review of that order by circuit court. Details of JDR's unappealed detention decisions on February 14 and March 26, 2020 might help the court focus its inquiry into relevant facts and circumstances. However, it is incumbent upon "all persons involved in determining whether the continued detention or shelter care is warranted pending court disposition" to conduct a fresh review of whether the criteria outlined in Code § 16.1-248.1 is "supported by clear and convincing evidence in support of the decision not to release the juvenile." Code § 16.1-248.1(D). JDR's prior detention decisions, therefore, could not form a proper basis for a circuit court decision not to release a juvenile.

ascertain whether the conclusion the [circuit] court reached had factual support." Id. at 207 (emphasis added); see also Duse, 295 Va. at 7-9 (considering the entire record under an abuse of discretion standard in a pre-trial bail appeal three years after the decision in Shannon was issued). In the absence of a stated standard of review or basis for the decision "we examine the record made in the circuit court to determine whether it supports the conclusion reached [by that court]." Id. at 204. We must affirm the decision of the circuit court if, after review of the record, we "find that [the circuit court's] conclusion, necessarily implicit in its holding, [did not constitute] an [abuse] of discretion."[3] Id. at 207.

In this case, to continue Barnes's detention, the circuit court had to find by clear and convincing evidence that there was probable cause to believe Barnes committed the crimes for which he was charged. The record supports such a finding. The uncontested proffer of facts was that Barnes was seen by officers with a bulge in his pocket that looked like a gun. Barnes fled the scene. A loaded gun was found near where the bulge in Barnes's pocket mysteriously disappeared. The record supports a finding of probable cause. Moreover, it is uncontested that the alleged acts would have been a Class 1 misdemeanor if committed by an adult and the alleged acts violated the terms of his parole for charges that would have been a felony if committed by an adult. See Code § 16.1-248.1(A)(1)(a), (b).

The circuit court also had to find that Barnes's release would be a clear and substantial threat to others or a clear and substantial threat of serious harm to himself. See Code § 16.1-248.1(A)(1). The record supports a finding of both criteria. In making the first finding, a court is directed to "[c]onsider[] the seriousness of the current offense or offenses" and "the seriousness of prior adjudicated offenses" to determine if release of the juvenile "constitutes a clear and substantial threat to the person or property of others." Code § 16.1-248.1(A)(1)(a). Here, Barnes committed several serious offenses in the space of three years that endangered the person and property of others. These offenses included burglary and larceny of a

---

[3] An unpublished opinion from a panel of this Court, recently came to the same conclusion. See Commonwealth v. Johnston, No. 1720-19-1 (Va. Ct. App. Apr. 4, 2020). However, because that memorandum opinion carries no precedential value, we do not rely on its holding in our analysis.

firearm in 2017, malicious wounding and use of a firearm in 2018, and trespass and destruction of property in 2018. Notably, even while Barnes was on parole for malicious wounding with a firearm, he clearly violated his parole conditions, as well as the law, by transporting a loaded firearm in his pocket through a residential neighborhood. His past conduct has put numerous other people in harm's way, and his continued pattern of conduct is clear and convincing evidence that his disregard for the safety of others would continue upon his release. Moreover, in the current incident, Barnes was walking with a younger person, who was then endangered when the two fled police. Likewise, Barnes's adjudication of conspiracy together with malicious wounding in 2018 shows Barnes's propensity for joining others in dangerous unlawful situations. Thus, the record supports with clear and convincing evidence that Barnes's release would constitute a clear and substantial threat to others.

Furthermore, the record shows that Barnes's release would present a clear and substantial threat of serious harm to his own life or health. See Code § 16.1-248.1(A)(1)(b). Accepting the defense's proffer of facts and Barnes's mother's testimony, at the very time Barnes's mother was striving to move Barnes to a safer neighborhood, Barnes was roaming the streets with a loaded firearm and then fleeing police while he pulled the gun from his pocket and flung it away. One can scarcely envision a more dangerous situation for Barnes to place himself in. And the promise of parental custody does not lessen the threat of serious harm to Barnes's life and health. He was presumably under parental custody when he acquired the gun he was carrying. His mother testified she was out of work because of the COVID-19 pandemic. It is reasonable to consider she will return to employment when work restrictions end, leaving Barnes with less supervision. Questions from the bench reveal the circuit court considered electronic monitoring, which was recommended by the parole officer. The court could accept the Commonwealth's argument that if Barnes decided to violate home confinement conditions, as he violated parole conditions by carrying a loaded gun, then neither an electronic device nor his mother's command is likely to stop him. Moreover, Barnes would be residing in a new home in a new town that was established by his mother after his detention. The court could consider the

possibility Barnes would abandon the new residence to return to the familiarity of his old neighborhood and friends.

After reviewing the record made in the circuit court, we conclude that the criteria set forth in Code § 16.1-248.1 for the trial court's decision to continue Barnes's secure detention were supported by clear and convincing evidence. The trial court acted within the "bell-shaped curve" of reasonable decisions it could reach in determining "where the equities lie." Thomas, 62 Va. App. at 111. Accordingly, the motion for bond hereby is denied.

## CONCLUSION

For the reasons stated above, Barnes's motion for bond is denied.

This order shall be published and certified to the circuit court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by the Chief Deputy Clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk